NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY GRASSO,

   Plaintiff,

v.

CONSOLIDATED RAIL CORP.,
ET. AL.,

   Defendants.

Civil Action No. 12-398 (KM)

OPINION

## I. INTRODUCTION

This matter comes before the Court by way of plaintiff Gary Grasso's ("plaintiff") Motion for Leave to file an Amended Complaint ("Motion"). (Mot. for Leave, May 16, 2013, ECF No. 31). Defendant New Jersey Transit Rail Operation, Inc. ("defendant") opposes the Motion. (Def.'s Opp'n, May 31, 2013, ECF No. 32). The Court has considered plaintiff's Motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, plaintiff's Motion is granted.

## II. BACKGROUND

### A. Factual Background

For purposes of the motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). The current litigation arises out of plaintiff's employment as a railroad

1

conductor beginning in 1976.  Plaintiff alleges he sustained personal injuries induced by "musculoskeletal stressors."  (Am. Compl. ¶¶ 6–10, 13–17, May 16, 2013, ECF No. 31-5). Plaintiff claims these stressors were caused by defendant's and co-defendant Consolidated Rail Corporation's (collectively, "defendants") negligence:

> (a)   [i]n failing to provide Plaintiff with a reasonably safe place in which to work;
> (b)   [i]n failing to provide appropriate equipment with which to work;
> (c)   [i]n failing to provide adequate supervision, tools, and manpower; and
> (d)   [i]n assigning Plaintiff work which it knew, or should have known, would place him at risk of developing harmful musculoskeletal conditions.

(Id. ¶¶ 9, 16).

Specifically, plaintiff's negligence claims are based on his alleged "over exposure to the risk factors for the development of bilateral ankle pain, Achilles tendinitis, and tarsal tunnel syndrome" from years of jumping on and off train cars and onto ballast rocks, walking on ballast rocks, climbing and descending ladders and stairs, and being "exposed to vibration which came through the floors of passenger rail cars into his feet." (Id. ¶¶ 7, 14; Mot. for Leave, ECF No. 31, at 1).  Plaintiff avers that as a result of defendants' negligence, he suffers from "musculoskeletal injuries and disease(s) including bilateral ankle pain, Achilles tendinitis, and tarsal tunnel syndrome." (Am. Compl. ¶¶ 6, 13, ECF No. 31-5).  These injuries have required plaintiff "to undergo extensive medical treatment, and in all likelihood [plaintiff] will continue to incur medical treatment for his injuries in the future." (Id. ¶¶ 10, 17).  Plaintiff asserts that, because of the mental and physical injuries he has sustained as a result of his employment, he

has lost "a considerable amount of wages from his employment and [his] power and capacity to work and earn money in the future have been permanently impaired." (Id.). Therefore, due to defendant's alleged negligence, plaintiff claims that he is no longer physically fit for employment as a conductor, and has sustained "substantial damages." (Id. ¶¶ 7–8, 14–15).

In addition to the alleged injuries developed from years of cumulative exposure to musculoskeletal stressors, the Amended Complaint alleges that plaintiff, on one occasion in January 2009, "slipped on snow causing his right foot and leg to go into a large hole thereby sustaining an injury to the right Achilles tendon." (Id. ¶ 20) (hereinafter, the "January 2009 incident"). The January 2009 incident occurred during hours of employment while plaintiff exited a train at defendant's Meadowlands Maintenance Facility. (Id.). Plaintiff alleges that defendant was negligent with respect to the January 2009 incident:

> (a) [i]n failing to provide Plaintiff with a reasonably safe place in which to work;
> (b) [i]n failing to remove the snow and subject hole;
> (c) [i]n failing to warn the plaintiff of the dangerous condition; [and]
> (d) [i]n assigning Plaintiff work which it knew, or should have known, would place him at risk of developing a foot injury.

(Id. ¶ 22).

As a result of the January 2009 incident, plaintiff alleges that he "sustained an Achilles tendinopathy superimposed upon the occupationally-induced condition in his right Achilles tendon." (Id. ¶ 21). He characterizes this injury as "permanent and disabling in nature," and alleges that he "has suffered and will continue to suffer severe pain and mental anguish in the future." (Id. ¶ 23). In addition, plaintiff alleges that he has lost "a considerable amount of wages from his employment" and seeks to recover damages for his pain and suffering, lost earnings

3

during the period of time in which he was allegedly disabled, lost future earnings and lost future earning capacity, and expenses for his medical treatment. (Id. ¶ 24). This January 2009 incident forms the basis of plaintiff's instant Motion.

### B. Procedural History

Plaintiff initiated this suit on January 23, 2012, filing a two-count Complaint alleging: (1) negligence against defendant Consolidated Rail Corporation and (2) negligence against defendant New Jersey Transit Rail Operations, for the reasons set forth above. (Compl., Jan. 23, 2012, ECF No. 1). After defendants filed their respective answers (see ECF Nos. 6, 9), the Court held a scheduling conference on April 25, 2012. At the conference, the Court set a November 16, 2012 deadline to complete fact discovery, and a September 17, 2012 deadline for adding parties or amending pleadings. (Pretr. Sched. Order ¶¶ 2, 14, Apr. 26, 2012, ECF No. 16). On October 19, 2012, the Court held a status conference with the parties, and entered an Amended Scheduling Order. (Am. Sched. Order, Oct. 24, 2012, ECF No. 27). In that Order, the Court adjourned the deadline for fact discovery to January 31, 2013, but it stated that all other dates from the April 26, 2012 Pretrial Scheduling Order were to "remain in full force and effect." (Am. Sched. Order ¶¶ 1, 7, ECF No. 27). On March 5, 2013, the Court entered a Second Amended Scheduling Order that extended the deadline for fact discovery to May 20, 2013, but it noted again that all other dates from the Pretrial Scheduling Order were to "remain in full force and effect." (Second Am. Sched. Order ¶¶ 2, 7, Mar. 5, 2013, ECF No. 30). Accordingly, the deadline to amend the pleadings remains September 17, 2012. (See Pretr. Sched. Order ¶ 14, ECF No. 16).

Plaintiff filed the instant Motion on May 16, 2013, seeking to add an additional claim

against defendant for negligence based on the January 2009 incident. (Mot. for Leave, May 16, 2013, ECF No. 31). Although plaintiff filed the Motion well beyond the September 17, 2012 deadline for amending the pleadings, plaintiff contends that he did so only "to conform with evidence recently discovered during the deposition of Dr. Green that was taken on April 17, 2013." (Id. at 8). That is, plaintiff asserts that while he "had previously been aware of a traumatic incident on or about January, 2009, neither plaintiff nor his counsel understood that the incident was connected to plaintiff's injuries and was a contributing cause of his current medical condition and limitations." (Id.). Defendant submitted its opposition brief on May 31, 2013,[1] and plaintiff filed his Reply on June 5, 2013.[2] (Def.'s Opp'n, May 31, 2013, ECF No. 32; Pl.'s Supplemental Mem. Supp. Mot. Am. Compl., June 5, 2013, ECF No. 33).

Plaintiff claims that the Court should grant him leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a) because there is a lack of bad faith, dilatory motive, undue delay, or prejudice to the defendants. (Mot. for Leave, ECF No. 31). Defendant counters that plaintiff violated Rule 15(a), and that his dilatoriness constitutes undue delay, because he failed to amend the Complaint despite having "previous opportunities to amend" in accordance with the Court-set deadline of September 17, 2012. (Def.'s Opp'n ¶ 18, ECF No. 32). In addition,

---

[1] The Court notes that defendant filed its opposition memorandum (ECF No. 32) under seal without filing the corresponding motion papers required by Local Civil Rule 5.3(c). The Court, in the accompanying Order, will require defendant to comply fully with all provisions of Local Civil Rule 5.3(c). If defendant fails to so comply, the Court may, in its discretion, remove the opposition memorandum from under temporary seal.

[2] The Court notes that plaintiff filed its reply memorandum (ECF No. 33) under seal without filing the corresponding motion papers required by Local Civil Rule 5.3(c). The Court, in the accompanying Order, will require plaintiff to comply fully with all provisions of Local Civil Rule 5.3(c). If plaintiff fails to so comply, the Court may, in its discretion, remove the reply memorandum from under temporary seal.

5

defendant contends that if the Motion is granted, "a new deposition will need to be conducted of [plaintiff]. Likewise, the granting of such motion will cause the need for additional fact depositions, most likely personnel of NJ TRANSIT." (Id. ¶ 15). In plaintiff's reply, he argues that granting the Motion "will not require any additional discovery or depositions other than the discovery deposition of possibly [the conductor] as well as a representative of New Jersey Transit most familiar with the form completed by [the conductor] in the event that the form is ever produced by the defendant railroad." (Reply Br., ECF No. 33 at 2). Thus, plaintiff contends that he satisfies the liberal standard of Rule 15(a), and the Court should grant the Motion. (Id.).

Both parties, however, fail to address whether Federal Rule of Civil Procedure 16(b)(4) governs the instant analysis, given the fact that plaintiff filed the Motion on May 16, 2013, well beyond the September 17, 2012 deadline to amend the pleadings. (See Pretr. Sched. Order ¶ 14, ECF No. 16).

## III. DISCUSSION

### A. Standard – Motion for Leave to File an Amended Complaint

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283 (NBF), 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." Karlo, 2011 WL 5170445, at *2

(citing Fed. R. Civ. P. 16(b)(4)).  There is "tension" between the standards of the two Rules, which the Third Circuit Court of Appeals has not resolved directly.  Id. at *2 n.3 (citing Assadourian v. Harb, 430 Fed. App'x 79, 81 (3d Cir. 2011)).

However, Third Circuit courts "have consistently reached the same conclusion: a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4) — i.e., that party must show 'good cause.'"  Id. (citations omitted).  Therefore, if a party has filed a motion to amend "after the deadline set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15."  Id. at *2; see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).  Further, treatises on federal civil procedure reach the same conclusion — where a motion is required to meet both Rule 16 and Rule 15, the moving party must first make the requisite "good cause" showing pursuant to Rule 16.  Charles A. Wright et al., 6A FEDERAL PRACTICE AND PROCEDURE, § 1522.2 (3d ed. 2010) ("[T]o the extent that other federal rules, such as Rule 15 governing pleading amendments, contain a more lenient standard than good cause, the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15.").

Like the parties in Karlo, neither party here has mentioned specifically Rule 16(b)(4) or its requirement that the moving party show good cause.  However, much like the defendant in Karlo, defendant here clearly advances an argument based on Rule 16 because its primary argument for denying leave is that plaintiff delayed filing the instant motion to amend.  See

7

Karlo, 2011 WL 5170445, at *2.  Thus, the fact that neither party specifically names Rule 16 or its required good cause showing does not preclude the Court from applying that standard to plaintiff's motion to amend.  See id. (finding that "although neither party referred directly to Rule 16, it plays a role in the instant motion, and the Court will not ignore that Rule").

      **B.**      **Plaintiff has Shown Good Cause Pursuant to Rule 16(b)**

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings.  The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps."  Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); see also Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed."  Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); see also Harrison, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.").  The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow

8

its proposed amended pleading. Prince v. Aiellos, No. 09-5429 (JLL), 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting Graham, 271 F.R.D. at 118); see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. GlobespanVirata, Inc. v. Texas Instruments, Inc., Civ. No. 03-2854 (GEB), 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting Rent-A-Ctr. v. Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 702 (E.D. Pa. Aug. 8, 2007); see also Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. See Stallings ex rel. Estate of Stallings v. IBM Corp., Civ. No. 08-3121 (RBK), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); Kennedy v. City of Newark, Civ. No. 10-1405 (CCC), 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a

motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. See Dimensional Commc'n., 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

Here, plaintiff did not include the third claim regarding the January 2009 incident in his original Complaint because he was unaware that it caused or exacerbated his injuries. Plaintiff's initial discovery of that correlation occurred recently during Dr. Aron Green's deposition on April 17, 2013. (Compare Mot. for Leave, ECF No. 31 at 7, with Exh. 3 to Mot. for Leave, ECF No. 31-4).[3] The Court notes that Rule 16(b)(4) does not require a party to exercise an advanced or superior level of diligence, but rather requires only reasonable diligence. Fermin, 2012 WL 1393074, at *3 (stating the inquiry should center on whether "through the exercise of reasonable diligence [the moving party] should have possessed, the knowledge necessary to file the

---

[3] A portion of the excerpt of Dr. Green's April 17, 2013 deposition set forth in plaintiff's brief (see Br., ECF No. 31 at 7) is not provided in the attached exhibit to the Motion for Leave (see Exh. 3, ECF No. 31-4). Specifically, Page 81 of Dr. Green's deposition is missing from the attached exhibit that purportedly is a transcript of Dr. Green's deposition. Plaintiff included a portion of the deposition, presumably from Page 81, in the brief and bolded some of Dr. Green's responses therein. The bolded responses highlight Dr. Green's opinion that the January 2009 incident "can definitely cause an Achilles tendinopathy to start or exacerbate." (Mot. for Leave, ECF No. 31 at 7). However, that bolded portion is missing from the deposition transcript provided in Exhibit 3 to the motion papers. (See Exh. 3, ECF No. 31-4).

The Court, at this time, accepts as true the quoted, bolded portion of Dr. Green's deposition provided by plaintiff in his brief. Additionally, the Court, at this time, takes as true plaintiff's assertion that he did not learn of the potential correlation between the January 2009 incident and his alleged injuries until the above-quoted response from Dr. Green during his deposition on April 17, 2013. However, the Court, in the accompanying Order, will require plaintiff to file on CM/ECF a copy of Dr. Green's entire April 17, 2013 deposition.

amended motion before the deadline had expired"). Although the January 2009 incident clearly occurred before plaintiff initiated this lawsuit on January 23, 2012, there is no indication that plaintiff knew of the connection between that incident and its effect on his injuries until Dr. Green's deposition on April 17, 2013. The Court finds, for purposes of the instant motion to amend, that plaintiff has exercised a baseline, reasonable level of diligence in pursuing discovery and developing his case. Although plaintiff may have learned earlier of the medical connection between the January 2009 incident and his injuries through the exercise of advanced diligence, that is not the standard this Court must employ. Thus, despite plaintiff's diligence, he could not reasonably have filed the amended complaint by September 17, 2012 because the requisite knowledge – that is, the fact that the January 2009 incident may have contributed to his injuries – was not reasonably available to plaintiff until April 17, 2013.

Further, upon discovery of the connection between the January 2009 incident and his injuries, plaintiff acted quickly to amend the complaint and include the claim. (See Mot. for Leave at 8, ECF No. 31). Specifically, Dr. Green's deposition was taken on April 17, 2013, which was when plaintiff "first became aware of the connection between the January, 2009 incident and his injuries and disability." (Id.). Thereafter, on May 16, 2013, plaintiff filed the instant motion to amend, less than one month after he allegedly became aware of the potential causal connection. Such a timely, conscientious filing demonstrates that plaintiff used reasonable diligence to avoid an unnecessary delay, particularly given the fact that the "deposition had to be transcribed and reviewed before [plaintiff's motion to amend] could be prepared and filed." (Id.). Additionally, the Court finds that any new discovery dictated by the addition of the proposed new claim will not unduly prejudice defendants because they have

already deposed plaintiff regarding the January 2009 incident and Dr. Green has already answered questions about it during his April 17, 2013 deposition.

In sum, the Court finds that plaintiff exercised reasonable diligence upon discovery of the correlation between the January 2009 incident and his injuries, and thereafter filed the motion for leave to amend in a timely manner. See Globespan, 2005 WL 1638136, at *3 ("A finding of good cause depends on the diligence of the moving party."). While "lack of prejudice to the nonmovant does not show good cause," the Court finds that, when taken in conjunction with the diligence demonstrated by plaintiff in timely filing, there is sufficient "good cause" pursuant to Rule 16(b)(4) for the Court to grant leave for plaintiff to amend. See Marlowe Patent Holdings LLC v. Dice Elecs., LLC, No. 10-1199 (PGS), 2013 WL 775764, at *12 (D.N.J. Feb. 27, 2013).

### C. Plaintiff Meets the Standard for Granting Leave Under Rule 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides, in relevant part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Federal Rules of Civil Procedure allow liberally for amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations marks omitted). The Rules further provide, that if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits. Id.

Under Rule 15, the decision to permit an amendment rests in the sound discretion of the Court. See id.; see also Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981). The U.S. Supreme Court has stated that leave to amend under Rule 15 may

be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman, 371 U.S. at 182; see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (stating "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust"). Put differently, absent undue or substantial prejudice, an amendment should be allowed under Rule 15 unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed, or futility of amendment. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (citations, internal quotation marks, and emphasis omitted). Pursuant to their discretion under Rule 15, courts generally grant leave to amend where, during the course of discovery, a party discovers "new evidence." See, e.g., Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1460 (D.N.J. June 20, 1986) (granting motion to amend upon discovery of new evidence where it did "not appear that the amendment would cause undue delay or that plaintiffs [had] a dilatory motive").

Here, defendants oppose plaintiff's motion to amend on grounds of undue delay. (Def.'s Opp'n ¶ 18, ECF No. 32). They do not argue that the Court should deny leave to amend on the basis of bad faith by plaintiff, prejudice to defendants, or futility of the proposed amendments. (See id.). Upon its own review of the record, the Court does not independently find reason to deny leave for plaintiff to amend on the basis of bad faith, prejudice to defendants, or futility of the proposed amendments. Thus, the Court will analyze whether it should deny plaintiff leave to amend only on the alleged basis of undue delay.

   i.   **Undue Delay**

While incidental delay is an insufficient ground on which to deny leave to amend, undue

delay supports denial.  Harrison, 133 F.R.D. at 468.  As the Court of Appeals for the Third

Circuit explained,

> [t]he passage of time, without more, does not require that a motion to amend a [pleading] be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. The question of undue delay, as well as the question of bad faith, requires that we focus on the [movant's] motives for not amending their [pleading] to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the [adverse party].

Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984) (internal citations omitted); see also

Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (noting "the question of undue delay

requires that we focus on the movant's reasons for not amending sooner" and the issue of

prejudice focuses on hardship to the nonmovant if the amendment is permitted); Harrison, 133

F.R.D. at 468 (stating, in cases of delay, the movant must show that "its delay in seeking to

amend is 'satisfactorily explained'") (quoting Leased Optical Dept's v. Opti-Ctr., Inc., 120

F.R.D. 476, 478 (D.N.J. Apr. 12, 1988)).

      Here, plaintiff discovered new relevant evidence on April 17, 2013 that he was not aware

of prior to September 17, 2012, the deadline for amending pleadings.  Although plaintiff had

knowledge of the January 2009 incident prior to September 17, 2012, he did not know that the

January 2009 incident was related to his injuries until the deposition of Dr. Green on April 17,

2013.  Shortly after receiving the transcribed deposition, plaintiff filed his motion for leave to

amend the complaint.  (See Mot. for Leave at 8, ECF No. 31).  For the reasons explained above,

the Court finds that plaintiff did not cause an undue delay — he filed a proposed amended

complaint and supporting brief less than one month after Dr. Green's deposition.  Any delay that

14

may have occurred has in no way unduly prejudiced defendants because the new claim does not require extensive additional discovery. Plaintiff filed the instant Motion on May 16, 2013, which was before May 20, 2013, the expiration of the fact discovery deadline. (See Second Am. Sched. Order ¶ 2, ECF No. 30). Further, the deadline for expert discovery – September 23, 2013 – has not expired. (Id. ¶ 5).

Defendant has not argued bad faith, dilatory motive, undue prejudice, or that plaintiff's proposed amendments would be futile. Therefore, the Court need not conduct an analysis of these elements under Rule 15(a)(2). Courts have consistently held that Rule 15 should liberally allow amendment of pleadings, and the Court here finds that plaintiff meets the standard to grant leave under Rule 15. See Foman, 371 U.S. at 182.

### IV. CONCLUSION

For the reasons stated herein, plaintiff's motion for leave to file the proposed Amended Complaint is granted. An appropriate form of Order accompanies this Opinion.

s/Michael A. Hammer
**UNITED STATES MAGISTRATE JUDGE**

Date: June 20, 2013